19 F.3d 19
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harvey BARNES, Defendant-Appellant.
 No. 93-5060.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1994.
 
 Before: MERRITT, Chief Circuit Judge; and BROWN and WELLFORD, Senior Circuit Judges.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 The defendant, Harvey Barnes, lodges a Fourth Amendment challenge to his conviction for illegal possession of a firearm. He argues that the police officer's stated reason for stopping and searching his car was pretextual, and that an unreasonable search ensued. Thus, he argues that evidence of the guns found in the trunk of his car should have been suppressed and not used to prosecute him as a felon illegally in possession of a firearm. Barnes also contends that the district judge erred in computing his sentence by using his prior felony to determine both the offense level and the criminal history category.
 
 
 2
 Officer Tate testified that as a traffic enforcement (criminal intervention) officer operating radar on eastbound traffic on the expressway (I-40), not far from the Mississippi River bridge at Memphis, he noticed the Barnes vehicle, a Lincoln, "following too close on ... a small compact car." Tate later noticed when he approached that the Barnes vehicle had Texas license plates and the car in front had Virginia license plates. Tate testified also that he had "no idea" of the speed of the two cars. He assumed "they were probably traveling together since they were following each other so close." Tate stated that Tennessee law "says you are supposed to maintain at least a car length for every ten miles per hour." He did not think, when asked, the vehicles were traveling as slowly as 30 or 35 miles per hour. As Barnes passed the officer, the officer turned on his blue lights and immediately pulled the defendant over. Tate then walked to the Barnes vehicle and told Barnes that he had been stopped for "following too close to the other car."
 
 
 3
 The only other proof about the speed of the Barnes car was the defendant's testimony that he was driving "about forty-five miles an hour" in an expressway area having a fifty-five mile an hour speed limit. The defendant also testified that he had never traveled in this area before; that there was light traffic at this time of morning and that he was not following closely nor linked with the car in front. Barnes thought he was approximately 70 feet behind that car.
 
 
 4
 The magistrate judge's report and recommendation made the following finding with respect to this episode:
 
 
 5
 Tate, who had been with the Crime Intervention Unit for about three years, worked primarily on the interstate to enforce the criminal laws of the State of Tennessee. He was observing vehicles travelling in an easterly direction on I-40 when he spotted Barnes' vehicle between 10 and 15 feet behind another smaller vehicle from Virginia. Officer Tate pulled from his position and travelled approximately a mile to a point where he stopped Barnes. After initially engaging Barnes in conversation, Tate began to write a warning ticket and states that he returned Barnes' driver's license and that the defendant was free to leave.
 
 
 6
 * * *
 
 
 7
 Considering the testimony of officer Tate, combined with the statements by the defendant, I conclude that the officer had a valid rationale for stopping Tate for following too close.
 
 
 8
 J/A 35, 36, 39. Neither the magistrate judge (nor any district judge) made a specific finding on the speed of travel nor on traffic conditions on the expressway at the time in question. The magistrate judge did note that Barnes testified that he was "about three to four car lengths behind the white car as he passed officer Tate."[1] The magistrate judge, nevertheless, found that "the stop of Mr. Barnes ... and the eventual search ... were not violative of his constitutional rights," this because "it is not unbelievable that Barnes may have been violating some traffic law as he drove in the area where Tate was positioned."[2]
 
 
 9
 While the magistrate judge evidently believed Officer Tate and evidently did not believe Barnes' version of the circumstances bringing about the stop, he relied on United States v. Crotinger, 928 F.2d 203 (6th Cir.1991), which called for an "objective inquiry into whether a reasonable officer would have made the stop based upon probable cause for a traffic violation." The defendant objected to the magistrate judge's report and recommendation and the finding that the stop was not pretextual.
 
 
 10
 The district court reviewed the magistrate judge's report and recommendation. Judge McCalla adopted the magistrate judge's report after a "de novo review of the record," and overruled the defendant's objections. A different district court judge heard the evidence at sentencing and, again, apparently credited the prosecution's version of the circumstances and basis for the stop rather than the defendant's, again without making specific findings about the circumstances of the stop. The officer's basis for the traffic stop was adopted by the district court, which stated:
 
 
 11
 Ms. Skahan [defendant's attorney] did an excellent job in creating some basis to question the testimony of one of the officers. On the other hand, I paid fairly careful attention to not only his testimony, but to the other officers who testified, and my conclusions were that they were telling the truth. I'm not suggesting to you that I think officers always tell the truth or that I ought to reach that conclusion simply because they are police officers. I don't do that. I don't believe that and I don't do that. But in this case I did conclude that they were telling the truth on all substantial points of a significant nature.
 
 
 12
 That burden that the government was placed to I do not think was substantial, but it was certainly a recognizable burden.
 
 
 13
 In United States v. Ferguson, 8 F.3d 385, 388 (6th Cir.1993) (en banc), we re-stated our standard of review of claimed pretextual stop cases, holding:
 
 
 14
 Whether a traffic stop violates the Fourth Amendment must be evaluated in the same manner as other alleged violations of that Amendment: by undertaking "an objective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only 'unreasonable' searches and seizures." Scott v. United States, 436 U.S. 128, 139, 98 S.Ct. 1717, 1723 (1978). And "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id. at 138, 98 S.Ct. at 1723.
 
 
 15
 In an earlier case, we held that an officer using radar on the same Memphis expressway was justified in stopping a defendant's car (from Texas) for allegedly travelling 66 m.p.h. in a 55 m.p.h. zone. See United States v. Crotinger, 928 F.2d 203 (6th Cir.1991). In finding that probable cause existed in that case, Chief Judge Merritt stated that the traffic stop was justified because "it is reasonable for a police officer operating a speed trap to stop and ticket vehicles going 66 m.p.h." Id. at 206.[3] We recited this rationale in Ferguson, stating: "The unavoidable inference to be drawn from our cases is that an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner." Id. at 390.[4]
 
 
 16
 In light of the foregoing discussion, we remand this case for the following reasons. First, neither the magistrate judge nor the district court had an opportunity to review the pretextual stop question in light of our en banc decision in Ferguson. This is a close case and it calls for a more specific determination on the initial stop issue in light of Ferguson. In Ferguson, the basis for the stop was an objective, provable statutory violation: the defendant did not have a license plate. In this case, we are confronted with a vague statute and we are especially concerned with the subjective "rule of reason" standard which controls this statute. Under such a subjective standard, many people would be violating this law every day. Therefore, a stronger, objective showing of an actual violation of the traffic laws needs to be established on the record in such a case as this. On remand, the district court should determine and state clearly whether Officer Tate had an objective, provable statutory violation on which to base the stop of the defendant's car. In other words, the district court must determine whether the evidence presented establishes by a preponderance of the evidence that Barnes' vehicle was in fact following too closely behind the car in front of it. The magistrate judge's determination that "... it is not unbelievable that Barnes may have been violating some traffic law...." is inconsistent with the preponderance of the evidence standard required by the district court.
 
 
 17
 While the district trial judge was made aware of Officer Tate's "track record" and "character," Defendant's Brief at 16, before making his own credibility determination, the magistrate judge, however, may not have had the benefit of this information. We believe it appropriate for the factfinder to review carefully all the facts bearing upon Officer Tate and the basis for his actions. "We evaluate any of the trial judge's underlying factual determinations [on probable cause] under a clearly erroneous standard," Jeffers v. Heavrin, 10 F.3d 380, 1993 WL 478912 (6th Cir. Nov. 23, 1993).
 
 
 18
 We are especially concerned with the subjective rule of reason in Tennessee on following too closely. The circumstances surrounding a stop for following too closely on an expressway within city limits should be examined carefully where there is a challenge based on a pretextual stop.
 
 
 19
 In light of this determination, we do not reach the search issue and the sentencing issues presented on the appeal. We, therefore, REMAND for a specific determination under Ferguson and for a more definite fact finding.
 
 
 
 [1]
 Tennessee law requires drivers to maintain a reasonable distance, considering speed and driving conditions. Tenn.Code Ann. Sec. 55-8-124 (1988). The Tennessee drivers' manual provides that vehicles should maintain at least one car length for every 10 miles per hour. The defendant contends that he was traveling only three to four car lengths behind the car in front of him. Brief for Appellant at 16
 
 
 [2]
 The magistrate judge, however, made this finding, while at the same time noting Barnes' testimony that he slowed down while crossing the bridge to view the river from the expressway. Whether Barnes was driving forty-five miles per hour, fifty miles per hour, or even fifty-five miles per hour at the critical time, is a necessary finding to determine whether he was following too closely "having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Tenn.Code Ann. Sec. 55-8-124
 
 
 [3]
 In Crotinger, this court noted "no evidence ... for any reason [for the stop] other than ... speeding." 928 F.2d at 206
 
 
 [4]
 We also stated in Ferguson: "We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made the stop." 8 F.3d at 391