**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Howard Eugene McCULLY, Jr., Defendant–Appellant.**

No. 93–1055.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1993.

Decided April 11, 1994.

Donald A. Davis, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Grand Rapids, MI, B. Rene Shekmer (briefed), Grand Rapids, MI, for plaintiff-appellee.

Lawrence J. Phelan (argued and briefed), Grand Rapids, MI, for defendant-appellant.

Before: JONES and SILER, Circuit Judges, and LIVELY, Senior Circuit Judge.

The court delivered a PER CURIAM opinion. Jones, Circuit Judge (pp. 712–14), delivered a separate concurring opinion.

PER CURIAM.

Defendant–Appellant Howard Eugene McCully appeals the district court's denial of his motion to suppress evidence. He claims that police officers stopped him under the pretext of a traffic violation when in fact they wanted to investigate illegal drug activity.

The parties briefed and argued this case before this circuit handed down its opinion in *United States v. Ferguson*, 8 F.3d 385 (6th Cir.1993) (*en banc*). We have permitted the parties to update their filings in light of that decision, which established a new test for analyzing whether an alleged pretextual traffic stop and search violates the constitutional protection against unreasonable searches and seizures. The court held in *Ferguson* that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *Id.* at 391.

In this case, an officer testified that he pulled McCully over for stopping his vehicle in the middle of a road. The district court found, and McCully admits, that he briefly stopped his car in the middle of the road. This action, the district court determined, violates the Grand Rapids, Michigan traffic code. McCully does not challenge that the officer had probable cause to believe that the traffic violation was occurring. Therefore, under *Ferguson*, the stop of McCully was reasonable under the Fourth Amendment, and the conviction is thereby AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring.

I write separately to express my continued misgivings over this circuit's decision in *United States v. Ferguson*, 8 F.3d 385 (6th Cir.1993) (*en banc*), as the instant case indicates the extent to which *Ferguson* strips

citizens of their Fourth Amendment protections by allowing police officers to search for illegal contraband when they have neither probable cause nor reasonable suspicion to do so.

The facts of this case are as follows. On August 20, 1991, Officer Terry Bykerk of the Grand Rapids, Michigan police department sat in an unmarked van conducting surveillance of a house in the middle of a block on a residential street. Bykerk was watching the house because the police believed it was a location from which illegal drugs were sold.

At the end of the day, Bykerk saw McCully's brown Toyota travel past his van and stop in the middle of the street near the watched house. A woman came from one side of the street and stood at the passenger side of the car, talking to McCully. During this exchange, Bykerk claims to have seen McCully making "motions to either the floor on the passenger side, such as bending over ... or reaching toward the glove box." J.A. at 79. After about one minute, a man approached the driver's side of the car and began talking to McCully.

At this point, Bykerk radioed backup police in the area to inform them of a traffic violation. Although it is undisputed that the Toyota was stopped illegally, the car was not blocking any traffic as it sat in a middle lane of the four-lane residential street.

Officers Richard Prince and Bert Webster were the first to respond to Bykerk's call. As they approached in their police cruiser, McCully began to drive away, so Prince turned on the cruiser's overhead lights. McCully pulled over to the curb, got out of his car, and began walking toward the officers.

Prince left his cruiser and asked McCully for his license and registration. McCully offered his license but said the registration was inside his car. Walking with Prince to the passenger side of the car, McCully reached through the open window and removed his registration from the glove compartment. As McCully was retrieving the registration, Webster, who had walked to the driver's side of the car, nodded his head to Prince, signaling that McCully should be placed under arrest. Webster later testified that he had observed a baggie near the gear shift that contained a leafy green material that looked like marijuana. As Prince instructed McCully to place his hands behind his back, McCully begin to struggle, but was soon subdued with the help of five additional officers who had arrived on the scene. These officers had arrived in response to Bykerk's original call reporting the traffic violation; Webster and Prince did not call for backups.

Webster informed Prince that he had observed marijuana in the car. Based upon that information, Prince searched McCully's person incident to his arrest. Prince found a baggie of crack cocaine in McCully's shirt pocket, as well as a folded napkin with some marijuana residue. In addition to the baggie with marijuana, a search of the car revealed a black leather pouch containing a loaded gun and a baggie of cocaine.

There is much objective evidence before us that Bykerk and the other officers chose to use the traffic violation as a pretext to stop McCully and search for drugs. First, Bykerk testified that he radioed for police backups because he saw a driver stopping to talk to people on a residential street, an event which occurs on streets everywhere every day. Though this action appears to violate the letter of the Grand Rapids traffic code, the government has offered no evidence that the ordinance is routinely—or even occasionally—enforced against a driver who stops for a minute or two on a road where he is not blocking traffic. It is suspicious that Bykerk, who was assigned to a unit that investigates the illegal drug trade, and who was watching for drug activity at a particular house, claims that he took the time to report a car stopped in the street in the absence of a desire to check the driver for contraband. Bykerk radioed the violation after the car was stopped for only two minutes, and a total of seven officers responded to Bykerk's call. This response seems to be an excessive reaction if the officers were interested only in issuing a citation to a driver stopped briefly on an empty street. Additional support for the conclusion that the stop was merely pretextual is offered by the fact that after the

arrival of the backups, Officer Webster, seeing a baggie of marijuana in the car, simply nodded to Officer Prince, who arrested McCully immediately, not knowing anything about what Webster had seen.

Were the test in this circuit whether a reasonable officer would have made the stop in the absence of an invalid purpose, *see United States v. Ferguson*, 989 F.2d 202, 204 (6th Cir.), *vacated*, 8 F.3d 385 (6th Cir.1993); *United States v. Mans*, 999 F.2d 966, 968 (6th Cir.1993), it seems obvious that a district court would have a serious job to do in the instant case, evaluating the evidence and the credibility of the witnesses. However, in light of the *en banc* decision in *Ferguson*, there is no longer a difficult question here, for *Ferguson* only permits the district court to inquire as to whether Officer Bykerk had probable cause to believe that McCully was committing a traffic offense, regardless of how uncommon enforcement of that offense might be or what unusual activities occur.

In my view, our decision in this case and others show how, under *Ferguson*, minor traffic violations can be used to stop and search most any driver, guilty or innocent, who the police have a mere hunch is involved in illegal activity. In *United States v. Barnes*, 1994 WL 75932, 1994 U.S.App. LEXIS 4358 (6th Cir. Mar. 8, 1994), a Tennessee officer stopped a motorist and searched his vehicle, allegedly on the ground that he was violating a Tennessee statute requiring drivers to maintain a reasonable distance from the car in front of them. The court expressed concern that "the subjective rule of reason in Tennessee on following too closely" could allow a pretextual stop. *Id.* at *3, 1994 U.S.App. LEXIS 4358, at *10. Also, in *Harvey v. United States*, 16 F.3d 109 (6th Cir. 1994), we upheld a search even though the officer admitted that he stopped the vehicle because the occupants were African-Americans whom he thought were more likely to be transporting drugs because of their race. I find these cases and the instant case to be unfortunate examples of the extent to which *Ferguson* has eliminated a Fourth Amendment protection in this circuit, and I hope that other officers, in their zeal to make arrests, do not take the cue from our abandonment of review to perform ever more stop-and-searches using minor traffic violations as pretexts.

On the basis of *Ferguson*, I must vote to affirm McCully's conviction. However, I continue to believe that our decision in that case represents an abdication of our duty to provide citizens the security to travel without unreasonable police stops and searches, as guaranteed by the Fourth Amendment.