*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0102P (6th Cir.)
File Name: 00a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

    *v.*

LANCE M. FREEMAN
(98-6636), DONALD W.
ADAMS (98-6637),
   *Defendants-Appellants.*



Nos. 98-6636/6637

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20138—Julia S. Gibbons, Chief District Judge.

Argued and Submitted: December 16, 1999

Decided and Filed: March 23, 2000

Before: MARTIN, Chief Judge; CLAY,* Circuit Judge;
WEBER, District Judge.

_____

 *The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:**    April R. Ferguson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant in 98-6636. **ON BRIEF:** April R. Ferguson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, E. E. Edwards III, EDWARDS, SIMMONS & OLIVER, Nashville, Tennessee, Wesley M. Oliver, TULANE LAW SCHOOL, New Orleans, Louisiana, for Appellants. Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

MARTIN, C. J., delivered the opinion of the court, in which WEBER, D. J., joined. CLAY, J. (pp. 6-15), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Chief Judge. Donald W. Adams and Lance M. Freeman seek review of the district court's order denying their motions to suppress evidence seized during an atypical traffic stop. The issue is whether the police had probable cause to stop and search the vehicle driven by Adams and Freeman. Because we find that the police did not have probable cause, we reverse and direct that the evidence be suppressed.

On the July 4, 1997 holiday, Memphis Police Officer David Tate stopped a motor home traveling eastbound on heavily traveled Interstate Forty for violating Section 55-8-123 of the Tennessee Code, after he allegedly observed the vehicle cross the white line separating the emergency lane from the right-hand lane of traffic for an estimated twenty to thirty feet. Section 55-8-123 provides that a vehicle "shall be driven as

appear to be alive and well to the extent that these drug interdiction officers are stopping target vehicles based upon subjective application of laws such as not driving "as practicable as possible," in order to gain suspicion to search for narcotics. *See id.* at 556-62. Such stops and searches, whether done under the guise of a vehicle checkpoint or a traffic stop, fail constitutional muster.

**D.   Conclusion**

While I have focused on what may appear to be the tactics of the drug interdiction officers in Shelby County based upon the cases reaching our Court from this area, cases have also appeared from other areas within this Circuit in which challenges to stops and searches are based on similar factual scenarios. *See, e.g., United States v. Akram,* 165 F.3d 452 (6th Cir. 1999). The officers of Shelby County, Tennessee, and drug interdiction officers everywhere in this Circuit should understand that they are not to abuse the authority provided to them to under *Whren* and *Ferguson.* Although illegal narcotics have a widespread and devastating effect on our country, the answer in controlling drug use does not lie in sacrificing our precious Fourth Amendment constitutional guarantees. The result of overzealous or even arrogant police conduct that rises to the level of a Fourth Amendment violation may be counterproductive where those individuals actually transporting illicit narcotics may have the evidence recovered against them suppressed – and charges subsequently dismissed – as a result of an illegal stop.

occurred in the same area, we specifically expressed our concern over the potential for abuse as it relates to "target" vehicles such as U-Hauls. *See* 195 F.3d at 265-67 (citing *United States v. Akram,* 165 F.3d at 460 (Guy, J., dissenting)).

Based upon the stream of cases reaching this Court since *Mesa,* in which the defendants have specifically challenged the search of their vehicles subsequent to a traffic stop along Interstate 40 near Memphis, it appears that sheriffs of drug interdiction units in this area may be doing precisely what *Mesa* cautioned against – using the authority vested in them under *Whren* and *Ferguson* as *carte blanche* to conduct "fishing expeditions" to search for contraband, particularly when a "target" vehicle such as a van, motor home, U-Haul, truck, or automobile with an out-of-state license plate is involved.[2] *See Mesa*, 62 F.3d at 162-63; *see also Hill,* 195 F.3d at 266.

It also appears that, in effect, some of these officers may be attempting to use the authority vested in them by *Whren* and *Ferguson* to accomplish what this Court found to be an unconstitutional practice by the State of Tennessee in *United States v. Huguenin,* 154 F.3d 547 (6th Cir. 1998). In other words, the Tennessee vehicle checkpoints we found unconstitutional in *Huguenin* on the basis that they were being operated not to detect intoxicated drivers, but as a pretext to stop drivers who had violated no traffic laws in order to gain reasonable suspicion to search for narcotics,

---

[2] An issue raised by some defendants in the course of challenging the initial stop of their vehicles in the cases cited herein is that the officers' motivation in stopping their vehicles was not sparked by concern for the enforcement of the traffic laws, but by the defendants' Mexican or Mexican-American ethnicity. *See, e.g., United States v. Palomino*, 100 F.3d 446 (6th Cir. 1996). In response to these "ethnic profiling" claims, I note that although the Supreme Court has held that an officer's subjective motivations play no role in ordinary, probable cause Fourth Amendment analysis, the Court has held that an officer's actual motivation is considered when a claim is brought under the Equal Protection Clause for selective enforcement of the law based on considerations such as race or ethnicity. *See Whren,* 517 U.S. at 813.

nearly as practicable entirely within a single lane." Adams was the driver of the motor home and Freeman was the only passenger. Officer Tate and Officer Michael McCord, who arrived on the scene shortly after the initial stop, requested registration and identification, which Adams and Freeman produced. The officers then asked if there were any drugs or weapons in the vehicle. After Adams stated that there were no drugs or weapons, Officer Tate asked for permission to "look around," which Adams reluctantly granted. Without anything further, the officers proceeded with a search of every compartment of the motor home, where they did in fact find marijuana hidden in several compartments.

Freeman and Adams filed motions to suppress the evidence found in the search of their motor home, alleging that Officer Tate lacked probable cause to stop the vehicle and that, even if the stop was lawful, the search was beyond the scope of the initial stop and there was no waiver. The magistrate, whose report was adopted by the district court, concluded that the stop was justified because the motor home's partial entry into the emergency lane constituted probable cause that either a traffic violation had occurred or that the driver was intoxicated. The district court then denied the motions to suppress the evidence from the search. Freeman and Adams pled guilty to possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, reserving the right to revoke their pleas should this Court reverse the district court and suppress the evidence discovered during the search.

When reviewing the district court's denial of a motion to suppress evidence, this Court applies a clearly erroneous standard to the district court's findings of fact while reviewing its conclusions of law *de novo*. *See United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998). In doing so, we consider the evidence in the light most favorable to the United States. *See United States v. Wellman*, 185 F.3d 651, 655 (6th Cir. 1999). Stopping a vehicle and detaining its occupants amounts to a seizure under the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The

reasonableness of the stop is ascertained by determining first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). It is in this context that we address the issue of whether Officer Tate had probable cause to justify a stop of the motor home driven by Adams.

It is true that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). We can not, however, agree that one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time constitutes a failure to keep the vehicle within a single lane "as nearly as practicable." *See United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996) (holding that a similar one-time entry into the emergency lane failed to constitute a violation of a Utah statute nearly identical to Tennessee Code Section 55-8-123). We therefore find that Officer Tate's observation of the motor home briefly entering the emergency lane is insufficient to give rise to probable cause of a traffic violation and warrant an invasion of Adams's and Freeman's Fourth Amendment rights. Because Officer Tate's stop of the motor home was not justified at its inception, the evidence found in the subsequent search must be suppressed.

Just as it does not constitute probable cause that a traffic violation occurred, the motor home's brief entry into the emergency lane does not constitute probable cause that Adams was intoxicated. As stated by the Tenth Circuit, "[i]f failure to follow a perfect vector down the highway or keeping one's eye on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." *Gregory*, 79 F.3d at 978-79 (quoting *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993)). Accordingly, Adams's failure to follow a perfect vector down

### C. The Apparent Pattern or Practice of Stopping and Searching "Target" Vehicles as an Abuse of Authority Under *Whren* and *Ferguson*

This Court has previously expressed its concern regarding the potential for abusive police practices under *Whren* and *Ferguson*, particularly as it relates to the actions of officers in this area. For example, in *United States v. Mesa,* a case involving an illegal search and seizure which took place pursuant to a traffic stop along this very stretch of highway in Tennessee, this Court warned against allowing police officers to use the authority provided to them under *Ferguson* to conduct "fishing expeditions" to search for contraband. *See* 62 F.3d at 162. The *Mesa* Court cautioned that because "we [have given] the green light to police officers to stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was to hope that narcotics or other contraband would be found as a result of the stop[, and because] . . . we have extended this authority to the broadest extent possible, . . . we have a duty to see that the authority is not abused." *See id.* The Court further cautioned as follows:

> Although there is always temptation in cases of this nature when a substantial quantity of drugs and firearms are found to let the end justify the means, it must be remembered that the courts only see cases in which the conduct of the officer resulted in contraband being found. If the officers had found no drugs in the defendant's car, obviously we would not even know that this traffic stop had ever occurred. Therefore, we must accept that courts will always be "thwarting" what some may view as a good piece of police work when a motion to suppress is granted in cases of this nature. Notwithstanding the importance of drug interdiction, however, we are still charged with the responsibility of seeing that the interdiction occurs without the Constitution being violated.

*Id.* at 163 (footnote omitted). Moreover, in *Hill*, a case brought on a motion to suppress from a stop and search which

Although it is true that illegal narcotics were obtained as a result of each of the searches in the above-referenced cases, we must remain mindful of our duty to insure that traffic stops and subsequent searches are conducted in accordance with Fourth Amendment guarantees, and that we do not succumb to the temptation of allowing the end to justify the means. *See Byars,* 273 U.S. at 29; *Akram,* 165 F.3d at 457-60; *United States v. Mesa,* 62 F.3d 159, 163 (6th Cir. 1995). As recently cautioned, the Court must give the same critical scrutiny to an officer's credibility and reason for making the initial stop as given to the defendant's testimony. *See Hill,* 195 F.3d at 165-67; *Akram,* 165 F.3d at 457-60; *see also United States v. Anderson,* 42 F. Supp. 2d 713, 717-19 (E.D. Mich. 1999) (recognizing the potential for abuse under *Whren* and therefore "closely scrutiniz[ing] the government's purported reason for the stop"). In addition, as Chief Judge Boyce F. Martin, Jr., once opined, the limits on police officers to detain and search based upon reasonable suspicion incident to a traffic stop must be sharply drawn so that law enforcement officers do not extend the detention and increase the extent of their search until they find conclusive evidence of wrongdoing and elicit a consent from a detainee. *See United States v. Erwin,* 155 F.3d 818, 825 (6th Cir. 1998) (*en banc*) (Martin, C.J., dissenting); *see also State v. McGinnis,* ___ N.W.2d ___, 2000 WL 136818, at *5-*11 (Neb. Ct. App. 2000) (collecting cases regarding parameters on reason to detain after purpose of initial stop completed).

It is not difficult to imagine, based upon the prodigious sampling of cases provided above, that innocent persons traveling along Interstate 40 in Tennessee have been stopped and subsequently searched simply because they were traveling in a "target" vehicle. However, because the questionable stops and searches of innocent persons' vehicles are usually not brought to the court's attention – inasmuch as no contraband is recovered and no court case results – we may never know the true extent of this apparent problem.

Interstate Forty did not give Officer Tate probable cause to stop the motor home.

Accordingly, the judgment of the district court is REVERSED. This case is REMANDED for further proceedings.

---

### CONCURRENCE

---

CLAY, Circuit Judge, concurring. I concur in the majority opinion reversing the district court's denial of Defendants' motion to suppress the evidence on the basis that the police officers lacked probable cause to stop the Winnebago. I write separately concerning what may be a troubling pattern or practice by some members of the Shelby County Sheriff's Department drug interdiction squad of stopping "target" vehicles on questionable probable cause grounds in this area of Tennessee in order to search for contraband. Although it is true that under *Whren v. United States,* 517 U.S. 806 (1996) and *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir. 1993) (*en banc*), a police officer may stop a vehicle for a traffic offense when his or her actual motivation is to search for contraband, it is also true that the officer must still have probable cause to make the initial stop, and must not abuse the *Whren* principle by using it as a subterfuge to justify the recovery of contraband after an illegal stop and search. Indeed, as the Supreme Court opined long ago, an illegal search cannot be justified by the potent evidence that it produces. *See Byars v. United States,* 273 U.S. 28, 29 (1927).

### A.  "Probable Cause" for the Stop

In this case, Officer Tate's purported reason for stopping Defendant Adams as he was heading eastbound in a Winnebago motor home along Interstate 40 near the Watkins Road exit northeast of downtown Memphis, Tennessee was because Officer Tate, who was later joined by Officer McCord after the stop occurred, allegedly observed Adams cross the solid white line separating the emergency lane from the right-most lane of travel, and remain across the line for about twenty to thirty feet. Officer Tate admitted that Adams was traveling at the posted fifty-five miles per hour speed limit. Based upon Tate's observation of the Winnebago crossing the white line for a distance of twenty to thirty feet,

446 (6th Cir. 1996) (involving car bearing Texas license plates stopped for traveling 42 in a 55 zone and for changing lanes without signaling along Interstate 40 by Shelby County Sheriff's Deputy Officer Kellerhall, wherein suspicion to detain was based on chemical smell associated with ether-based cocaine emanating from car; Kellerhall asked the defendant to sign consent to search form while issuing "courtesy citation"); *United States v. Gonzalez,* No. 94-6503, 1996 WL 626286 (6th Cir. Oct. 24, 1995) (*per curiam*) (involving motor home stopped for "weaving over the left and right hand lane markers" while traveling on Interstate 40 by Officer Kellerhall who was later joined by backup officers, wherein suspicion to detain was based on smell of "raw" marijuana; consent to search obtained while officer issued "courtesy" citation); *United States v. Mendoza,* Nos. 93-6228; 93-6356, 1994 WL 526711 (6th Cir. Sept. 27, 1994) (*per curiam*) (involving truck stopped for traveling 63 in 55 zone along Interstate 40 by Officer Kellerhall, wherein suspicion to detain was based on smell of "raw" marijuana emanating from the truck and alleged inconsistent stories provided by driver and passenger; obtained consent to search, but twice advised the driver that if he did not consent, Kellerhall would send for canine unit to conduct narcotics sniff); *United States v. Ledezma,* 26 F.3d 636 (6th Cir. 1994) (involving van stopped for "speeding" along Interstate 40 by Shelby County Sheriff's Deputy Officer Edmonds who was later joined by Officer Lane, wherein suspicion to detain was based on "nervousness" and "evasiveness" of the driver; consent to search obtained); *United States v. Barnes,* No. 93-5060, 1994 WL 75932 (6th Cir. Mar. 8, 1994) (involving car bearing Texas license plates stopped along Interstate 40 by Shelby County Sheriff's Deputy Officer Tate for "following too close on a small compact car," wherein this Court remanded the case back to the district court for further fact finding regarding Officer Tate's purported reason for initially stopping the vehicle, while noting its concern with the "subjective rule of reason in Tennessee on following too closely").

consent to search obtained; canine sniff conducted); *United States v. Wellman,* 185 F.3d 651 (6th Cir. 1999) (involving motor home bearing Texas license plate stopped for traveling 63 in 55 zone along Interstate 240 near Watkins Road exit by Shelby County Sheriff's Deputy Officer Chris Jones who was later joined by Officer Lane, wherein suspicion to detain was based upon alleged inconsistent stories provided by the defendant after Jones placed him in back of patrol car to issue "courtesy" citation; consent to search obtained; canine sniff conducted); *United States v. Guimond,* 116 F.3d 166 (6th Cir. 1997) (involving mini-van bearing Quebec license plate stopped for traveling 65 in 55 zone along Interstate 40 by Shelby County Sheriff's Deputy Officer Tartera, wherein suspicion to detain based on spare tire in back seat instead of its proper storage compartment and vehicle had only two rows of seats instead of three; Tartera placed driver in back of patrol car to issue "warning" citation and questioned driver as to travel plans, then went to van to question passenger; consent to search obtained); *United States v. Mamoth,* Nos. 94-6315; 94-6364; 95-5048, 1997 WL 215511 (6th Cir. April 29, 1997) (involving motor home stopped for changing lanes without signaling while traveling on Interstate 40 by Shelby County Sheriff's Deputy Officer Daniels and later joined by Officer Dollahite, wherein officers' suspicion to detain was based on allegedly inconsistent statements made by driver and passenger; this Court reversed denial of motion to suppress on the basis that the driver was illegally detained); *United States v. Saez,* No. 96-5168, 1997 WL 176434 (6th Cir. April 10, 1997) (*per curiam*) (involving van stopped for traveling 64 in a 55 zone along Interstate 40 by Shelby County Sheriff's Deputy Officer Segerson, wherein officer's suspicion to detain was based on observation that rear portion of van had been raised and a strong scent of air freshener emanated from the van, along with Sergerson's knowledge "[a]s a police officer patrolling the interstate highways, he was aware that drug traffickers often transported their wares along I-40"; canine sniff was done).

The cases bearing similar scenarios have further arisen before the Court. *See United States v. Palomino,* 100 F.3d

Tate stopped the vehicle for violating Tennessee Code § 55-8-123, which requires all vehicles to be driven "as nearly as practicable entirely within a single lane."

On appeal, Defendants argue, and we agree, that the mere passage of their vehicle across the line separating the emergency lane of a highway from the right lane of travel did not constitute probable cause that Defendants were violating Tennessee law. Based upon Officer Tate's testimony that he observed the Winnebago cross over the white line for about twenty to thirty feet and that Defendants were traveling at the posted speed limit, Defendants calculated the period of time that Officer Tate observed the Winnebago cross over the line to be about one-third of a second.[1] We agree that such a brief period of time where the Winnebago crossed over the line did not provide Officer Tate probable cause to stop the vehicle for a traffic violation, particularly where the weather conditions on the day in question were windy, Adams was rounding a curve in the road at the time, and Officer Tate admitted that it would not be unusual for a Winnebago to cross over the white line inasmuch as the vehicle is top-heavy and the Memphis area gets a lot of high winds, especially in that area of open highway.

To accept Officer Tate's purported reason for stopping the Winnebago as constituting probable cause for an alleged

---

[1]Defendants calculations are as follows:
Twenty to thirty feet equates to a distance between 0.0379 tenths of a mile and 0.0568 tenths of a mile.

$(20 \text{ feet}) \times (1 \text{ mile}/5280 \text{ feet}) = 0.00379 \text{ miles} = 0.0379$ tenths of a mile

$(30 \text{ feet}) \times (1 \text{ mile}/5280 \text{ feet}) = 0.00568 \text{ miles} = 0.0568$ tenths of a mile

The amount of time that the Winnebago actually crossed the white line based upon the fifty-five mile per hour speed limit at which the Winnebago was traveling is calculated as follows:

$(0.00379 \text{ miles}) \times (1 \text{ hour}/55 \text{ miles}) \times (3600 \text{ seconds/hour}) = 0.248$ seconds

$(0.00568 \text{ miles}) \times (1 \text{ hour}/55 \text{ miles}) \times (3600 \text{ seconds/hour}) = 0.372$ seconds

traffic infraction would perpetuate what appears to be the improper tactics sometimes employed by members of the Shelby County Sheriff's Department, *see infra* Part B., and give credibility to an unreasonable basis for the stop. In making credibility determinations as to an officer's purported reason for initially stopping a vehicle, the Court may use the record in the case before it, what has been learned from other similar cases, all reasonable inferences that can be drawn therefrom, as well as its own common sense. *See United States v. Hill,* 195 F.3d 258, 266 (6th Cir. 1999) (quoting *United States v. Akram*, 165 F.3d 452, 458 (6th Cir. 1999) (Guy, J. dissenting)). Indeed, as will be illustrated in Part B., this is not the first time Officer Tate's credibility and truthfulness for stopping a vehicle traveling along Interstate 40 in Shelby County, Tennessee have been challenged. *See United States v. Atkins,* Nos. 98-5827; 98-5828, 1999 WL 1045942, at **2 (6th Cir. Nov. 8, 1999) (noting that the defendant contended that Officer Tate was not truthful in claiming that he stopped the Blazer for speeding, wherein the defendant submitted Tate's record for untruthfulness in other cases in support of this contention); *United States v. Barnes,* No. 93-5060, 1994 WL 75932 (6th Cir. Mar. 8, 1994) (remanding the case for further fact finding as to whether Officer Tate had more objective reasons for stopping the vehicle).

Considering the facts of this case along with what can be learned from other cases arising out of this area of Tennessee and all reasonable inferences derived therefrom, Officer Tate did not have probable cause to stop the Winnebago, and may have been using the Tennessee statute and the authority provided to him under *Whren* as a subterfuge to search this target vehicle for contraband. *See Hill,* 195 F.3d at 165-67 (noting that an officer's credibility in making the initial traffic stop must be scrutinized, particularly when a target vehicle such as a U-Haul is involved); *Ferguson,* 8 F.3d at 388 (holding that traffic stop cases must be evaluated by undertaking an objective assessment of an officer's actions in light of the facts and circumstances then known to him to determine whether they were reasonable). The subjective way

in which the Tennessee statute was employed by Officer Tate to claim that Adams was violating it at the time of the stop raises the spectre that the statute may potentially be used by these interdiction officers as a tool to engage in both legal and illegal stops and searches.

**B.  Cases Suggesting a Possible Pattern or Practice by Officers of the Shelby County Sheriff's Department of Stopping and Searching "Target" Vehicles**

The following cases, presented in reverse chronological order as decided by this Court, represent a sampling of what may constitute an apparent pattern or practice of some drug interdiction officers in this area of Tennessee where the defendants involved have brought motions to suppress the evidence. That is to say, the following cases involving defendants' motions to suppress are those in which the interdiction officers stationed along Interstate 40 near Memphis have stopped a target vehicle, often on questionable or subjective probable cause grounds, and where the subsequent sequence of events repeat in a manner apparently crafted to justify a resulting detention and search.

The list of cases begins with those very recently decided. *See United States v. Atkins,* Nos. 98-5827; 98-5828, 1999 WL 1045942, at **1 (6th Cir. Nov. 8, 1999) (involving a Chevrolet Blazer and a van both bearing Texas license plates stopped for "speeding" by Officer Tate and Officer McCord, respectively, wherein officers' suspicion to detain and search was based on smell of marijuana emanating from each vehicle; at suppression hearing, evidence offered by the defendant as to Tate's untruthfulness); *United States v. Hill,* 195 F.3d 258 (6th Cir. 1999) (involving U-Haul stopped for traveling 63 in 55 zone along Interstate 40 by Shelby County Sheriff's Deputy Officer Whitlock who was later joined by Officer Kellerhall, wherein suspicion to detain was based on inconsistent stories allegedly provided by driver and passenger after two had been separated when Whitlock placed driver in patrol car, along with nervousness of driver and used tissue on floorboard of U-Haul; "courtesy" citation issued;