IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2009 Session

**STATE OF TENNESSEE v. WILLIAM R. COOK**

**Appeal from the Circuit Court for Williamson County**
**No. I-CR092865     Robbie T. Beal, Judge**

---

**No. M2008-02562-CCA-R3-CD - Filed August 12, 2009**

---

The Defendant, William R. Cook, was charged with driving under the influence (first offense)("DUI"), a Class A misdemeanor. See Tenn. Code Ann. § 55-10-403. The trial court denied his motion to suppress the evidence obtained as a result of the traffic stop that led to the charges against him. The Defendant thereafter pleaded guilty, but reserved for our consideration a certified question of law regarding the constitutionality of the traffic stop supporting the charge against him. After our review, we reverse the judgment of the trial court. The indictment charging the Defendant with DUI is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Indictment Dismissed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J.C. MCLIN, JJ., joined.

Mark L. Puryear, III, Franklin, Tennessee, for the appellant, William R. Cook.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshe Dulany Faughn, Assistant Attorney General; Kim R. Helper, District Attorney General; and Josh D. Marcum, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Testimony in this case was taken at the February 20, 2008 hearing on the Defendant's motion to suppress the fruits of a traffic stop executed on him by Officer Michael Stephens of the Franklin Police Department. Officer Stephens testified that he worked the midnight shift on May 26, 2007. While on patrol at about 12:30 a.m., he stopped at a red traffic light on Murfreesboro Road near the Interstate 65 overpass. Murfreesboro Road is a four-lane road at that point, and Officer Stephens stopped in the right lane. As he waited at the light, a pickup truck operated by the Defendant drove

up in the lane to his left, stopping abruptly enough to cause its back end to lurch slightly into the air. As it was his practice to observe any abnormal driving, Officer Stephens decided to follow the Defendant's vehicle.

Both vehicles proceeded through the traffic light after it turned green. Officer Stephens observed the Defendant, still in the left-hand travel lane, weaving slightly between the lane-dividing line on his right and the double yellow center line on his left. The Defendant's truck did not touch either line, but weaved three to four times within its own lane. At that time, Officer Stephens activated his vehicle's video camera, which taped the remainder of the incident. The Defendant introduced a copy of the resulting video at trial.

The Defendant then turned left onto Southwinds Boulevard, a two-lane road divided by a double yellow line. Officer Stephens described the Defendant's vehicle's movement as a "wide turn," during which the Defendant's truck almost made contact with the white fog line on the right side of the road. Continuing on Southwinds Boulevard, the Defendant's truck drifted left such that its left tires moved entirely over the right-hand portion of the double yellow center line, making the intervening strip of asphalt visible to the right of those tires. The Defendant's tires overlapped but did not cross over the left-hand side of the double yellow line. Officer Stephens estimated that, at that point, the Defendant's truck was six to eight feet from the white fog line on his right side. The Defendant then returned to the center of his lane. Officer Stephens felt he was observing an impaired driver and initiated a traffic stop.

On cross-examination, Officer Stephens testified that his stop of the Defendant was the third or fourth suspected DUI stop of his law enforcement career. He also affirmed that he did not observe the Defendant violate any traffic laws. The Defendant signaled his turn onto Southwinds Boulevard, and at no point did he swerve his vehicle or interfere with other traffic. Officer Stephens testified that the time of night contributed to his assessment of the Defendant's driving.

In denying the Defendant's motion to suppress, the trial court credited Officer Stephens' testimony regarding the Defendant's abrupt stop and in-lane weaving. The court "didn't witness a wide turn being made," however, and noted that nothing on the video evidenced any "abrupt attempt [by the Defendant] to correct [his] action that may be consistent with someone who's been drinking and driving." The trial court expressed concern about the length of time the Defendant's wheels remained on the double-yellow line on Southwinds Boulevard, saying that the Defendant "rode the center line . . . for an extended period of time."

Although it opined that Officer Stephens "jumped the gun a bit" by stopping the Defendant, the trial court noted that Officer Stephens appeared to have been concerned about allowing the Defendant to attempt to traverse a series of winding turns coming up on Southwinds Boulevard. The trial court observed that this was "an extremely close case" but found "a reasonable suspicion with articulable facts" to support the stop. The trial court noted that "this case would be significantly different had it not been for the approach of the turn in the videotape."

**Analysis**

Tennessee Rule of Criminal Procedure 37(b)(2) provides that the defendant may appeal from any judgment of conviction on a plea of guilty or nolo contendere, if:

> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved – with the consent of the state and of the court – the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> > (i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
> >
> > (ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> >
> > (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
> >
> > (iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2); see also State v. Irwin, 962 S.W.2d 477, 478-79 (Tenn. 1998); State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). Our review of the record reflects that the Defendant has met these conditions.

The Defendant's certified question of law frames the issue before us as:

> [w]hether the trial court erred in denying the Defendant's motion to suppress the stop of the Defendant's motor vehicle on May 6, 2007 due to the traffic stop being unconstitutional because Officer Michael Stephens, Franklin Police Department, did not have a warrant or a reasonable suspicion or probable cause, supported by specific and articulable facts, to believe that [the Defendant] had committed, was committing or was about to commit a crime when the stop was made, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 7 of the Constitution of the State of Tennessee.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). We review a trial court's applications of law to fact de novo, however. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The party prevailing at the suppression hearing is further "entitled to the strongest legitimate

view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from such evidence." Odom, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." Our supreme court has noted that "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

One exception to the warrant requirement exists "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been, or is about to be committed." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Terry v. Ohio, 39 U.S. 1, 20-21 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997)). Whether or not a police officer had reasonable suspicion is determined by considering the totality of the circumstances. Id.

We accept the trial court's findings that the Defendant stopped abruptly and weaved three or four times within his lane. Having reviewed the video, we also agree with the trial court's findings that the Defendant did not make a wide turn, but that he rode the Southwinds Boulevard center line for an extended period of time. Although the Defendant's left tires never completely crossed the center line, they made contact with it for about five seconds, although we note that the road had no center line for some of that time due to a gap at the intersection with a cross-street. As noted, the trial court recognized Officer Stephens' concern about the winding portion of road ahead of the Defendant at the time of the stop; the video, however, shows that the Defendant navigated that area's first turn with little difficulty, although his left tires still touched the road's center line at that point. The presence of a relatively challenging upcoming span of road, however, is irrelevant to the determination of whether a reasonable suspicion exists to believe a particular driver is intoxicated.

The State can thus rely on the following as specific and articulable facts supporting Officer Stephens' stop of the Defendant: within a short period of time the Defendant (1) stopped abruptly at a stop light; (2) slowly weaved three or four times within his own lane; and (3) "rode" a double yellow center line, without crossing over it, on one occasion for about five seconds.

We recognize the Defendant's citation of United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000), which held that a police officer did not have reasonable suspicion to stop a vehicle after observing the vehicle cross its emergency line once for twenty to thirty feet. This case is distinguishable from Freeman, however, as the Defendant did more than simply cross a dividing line on one occasion.

Our supreme court's decision in Binette is more instructive. In that case, our supreme court held that a police officer lacked reasonable suspicion to stop a car that both drifted back and forth

within its own lane and touched a road's center line twice.  Id. at 219.  As in this case, the Binette defendant did not violate any rules of the road.  Our supreme court also noted that the Binette defendant "proceeded correctly through a number of intersections and stop lights," "maintain[ed] appropriate distances behind the vehicles he was following," and "was traveling along a winding road – a more difficult course on which to travel in a straight line."  Id.  The court also noted that "[i]f failure to follow a perfect vector down the highway . . . [was] sufficient reason[] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy."  Id. (quoting United States v. Lyons, 7 F.3d 973, 976 (10th Cir. 1993)).

Although the Defendant's conduct in this case went somewhat beyond that of the Binette defendant, we conclude that the State has not shown specific and articulable facts sufficient to create a reasonable suspicion that the Defendant was driving under the influence.  As in Binette, the Defendant weaved in a non-abrupt and non-exaggerated manner within his own lane.  He touched a road's center line once for about five seconds, part of which time included a break in the center line, whereas the Binette defendant touched a road's center line twice for shorter periods of time.  We consider these events to be relatively similar.  Officer Stephens' testimony reflected that the Defendant did not interfere with any other traffic and that he proceeded normally through the traffic light on Murfreesboro Road.  The video also reflects that the Defendant drove straight on the included portion of Murfreesboro Road, had no trouble entering a left turn lane, turned normally onto Southwinds Boulevard, and was able to navigate a relatively sharp turn immediately before Officer Stephens' activated his blue lights.  In our view, the driving depicted on the video is not erratic or haphazard and did not appear to create or indicate a dangerous situation.  See State v. Smith, 21 S.W.3d 251, 258 (Tenn. Crim. App. 1999).

This case is thus analogous to Binette but for the Defendant's abrupt stop at a traffic light; but for this abrupt stop, the Defendant would have done nothing more than "[fail] to follow a perfect vector down the highway."  Id.  After our review, however, we conclude that under the totality of the circumstances the addition of this abrupt stop onto facts otherwise very similar to those in Binette is insufficient to support more than a reasonable suspicion of somewhat inattentive, rather than intoxicated, driving.

## Conclusion

Based on the foregoing authorities and reasoning, we conclude that the evidence does not support the trial court's finding that Officer Stephens had reasonable suspicion, based on specific and articulable facts, to stop the Defendant's vehicle.  We accordingly reverse the trial court's denial of the Defendant's motion to suppress the evidence obtained as a result of that stop.  We vacate the Defendant's conviction and dismiss the charge against him.

_____
DAVID H. WELLES, JUDGE