Christopher E. Cotten, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Memphis, TN, for plaintiff-appellee.

Eugene A. Laurenzi (argued & briefed), Agee, Allen, Godwin, Morris & Laurenzi, Memphis, TN, for defendant-appellant.

Before: KEITH, JONES, and BOGGS, Circuit Judges.

KEITH, Circuit Judge.

Appellant, Cecil R. Ferguson, appeals his conviction and sentence for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). For the foregoing reasons, we REVERSE appellant's conviction and VACATE his sentence.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Cecil R. FERGUSON, Defendant–**
**Appellant.**

**No. 91–6316.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 1, 1992.

Decided and Filed March 19, 1993.

### I.

At approximately 1:30 a.m. on October 18, 1990, Officer Ernie Writesman was on routine patrol at the Royal Oaks Motel parking lot in Memphis, Tennessee. While

talking with the motel's security guard and conducting a security check, Writesman observed Ferguson drive into the parking lot in a 1977 Lincoln. Ferguson was followed by Leonard Lester, who was driving a 1977 Ford.

Writesman observed Ferguson and Lester park their cars opposite one another near room 203. Ferguson then got out of his car and walked towards Writesman and the guard. The guard asked Ferguson if he could help him. Ferguson replied that he was looking for room 212 to return the Lincoln which he had borrowed earlier. After getting directions from the guard, Ferguson proceeded back towards his vehicle. Having overheard the conversation between Ferguson and the guard, Writesman drove towards the front of the motel where he saw Lester lay down across the front seat of the Ford. Suspicious of Ferguson and Lester, Writesman drove across the street where he could observe them undetected.

Writesman observed Ferguson get into the Ford with Lester. Lester drove to a position near room 410. Ferguson entered the room and in a few minutes came out and got back in the Ford. The two men then drove to the Lincoln, where Ferguson retrieved a grey briefcase. Ferguson got back into the Ford, and he and Lester again drove to room 410. Ferguson entered the room with the briefcase and in a few minutes returned, still carrying the briefcase. Ferguson then got back into the Ford with Lester and they left the motel parking lot heading east on Summer avenue. Having observed this activity, Writesman followed the men and pulled them over when he noticed, for the first time, that Lester's Ford had no visible license plate.

Upon stopping the Ford, Lester got out of the vehicle and walked over to Writesman, who asked Lester for his driver's license. Writesman asked Lester "what he was up to" and Lester stated that he had been at the motel with a woman. Writesman then placed Lester in the back seat of the police car and called for assistance. As Writesman was waiting for backup, Ferguson remained in the front seat of the Ford.

Once his backup arrived, Writesman approached the Ford and observed a .22 caliber pistol laying on the front seat. Writesman also noticed a plastic bag in the vehicle containing several envelopes, the contents of which were later identified as cocaine. Ferguson, who was sitting in the front seat holding a briefcase, was then placed under arrest. A search of the briefcase revealed zip-lock plastic bags, scales, and what are apparently drug notes.

The government contends that Writesman stopped Lester's vehicle because it had no visible license plate, which is a violation of Memphis City Ordinance 21–269. When asked at the suppression hearing why he stopped the vehicle, Writesman stated: "There were a couple of reasons why I stopped it. Number one was the activity that I just observed at the Royal Oak Motel. And then the fact that it had no license plate on it that could be seen." (App. at 66). Although Writesman stated that one of the reasons he stopped the vehicle was because it had no visible license plate, while on the scene of the stop, he made no inquiry or investigation concerning the absence of a visible license plate on the Ford, nor did he give Lester a citation for having no visible license plate. It was not until Writesman reviewed photographs from the scene of the stop that he learned that there was a drive out tag lying on the shelf of the rear window of the Ford.

Ferguson and Lester were charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. They were also charged with carrying and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Ferguson filed a motion to suppress the evidence seized during his arrest, alleging that the stop and search of the Ford was "pretextual, unreasonable and illegal," in that no probable cause existed for the stop. (App. at 6). This motion was heard by a magistrate who concluded that the stop and search was based on a reasonable suspicion and was not pretextual. The magistrate's recommendation was adopted by the district court.

Pursuant to a negotiated plea agreement, Ferguson pled guilty to the drug offense and the government dismissed the weapons charge. Ferguson reserved the right to appeal the denial of his motion to suppress. At sentencing, the court refused to consider Ferguson's challenge to the validity of two prior state felony convictions used to categorize him as a career offender under the Sentencing Guidelines. On appeal, Ferguson argues that the court erred in denying his motion to suppress and in categorizing him as a career offender. Each of these issues are discussed below.

## II.

■ Ferguson contends that his Fourth Amendment right against unreasonable searches and seizures was violated because Officer Writesman's stop and search of Lester's vehicle was unreasonably pretextual. Specifically, Ferguson argues that the absence of a visible license plate on the Ford served as a pretext to stop and search the vehicle for drugs. The district court, however, found that the stop was based on probable cause and was not pretextual. We must review the district court's findings of fact as to Ferguson's motion to suppress under the clearly erroneous standard. *United States v. Duncan*, 918 F.2d 647, 650 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991).

■ Ferguson argues that the weapon and drugs seized as a result of the stop should not have been admitted into evidence against him. *See Wong Sun v. United States*, 371 U.S. 471, 486–87, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963) (Court suppressed the use of narcotics discovered as a result of illegal police activity as "fruit of the poisonous tree"). This Circuit's standard for determining when a police investigatory stop is illegally pretextual is explained in *United States v. Pino*, 855 F.2d 357, 361 (6th Cir.1988), *cert. denied,* 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990). In *Pino*, we adopted the Eleventh Circuit's analysis regarding pretextual stops, applying the reasoning of *United States v. Smith*, 799 F.2d 704 (11th Cir.1986). In *Smith*, the Eleventh Circuit wrote:

> [T]hat in determining when an investigatory stop is unreasonably pretextual, the proper inquiry ... is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.

799 F.2d at 709 (emphasis in original). We note that the "reasonable officer" standard articulated in *Smith* and adopted by this Court in *Pino* is the controlling standard in this Circuit regarding pretextual stops. *Pino*, 855 F.2d at 361; *see also United States v. Crotinger*, 928 F.2d 203, 206 (6th Cir.1991).

In *Smith*, a Florida Highway Trooper and a Drug Enforcement Agent followed two men traveling on Interstate 95 in a 1985 Mercury. The Trooper testified that they followed the vehicle because the men matched a drug courier profile. According to the Trooper, they followed the vehicle for about a mile and a half and pulled the vehicle over when they noticed the vehicle start to weave. After stopping the men, the Trooper questioned the driver about the ownership of the vehicle and also called for a drug dog to sniff the vehicle for drugs. With the assistance of the dog, the officers discovered cocaine in the trunk of the vehicle. The two men were arrested and charged with cocaine possession and conspiracy to distribute. They filed motions to suppress the cocaine found in their trunk, alleging that the stop of their vehicle was unreasonable. The trial court ruled that the stop was legal.

On appeal, the Eleventh Circuit wrote that "[t]he stop was unreasonable not because the officer secretly hoped to find evidence of a greater offense, but because it was clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." 799 F.2d at 710. In analyzing the objective evidence in the case, the court noted that:

> [W]hat turns this case is the overwhelming objective evidence that [Agent] Vogel had no interest in investigating possible

drunk driving charges: he began pursuit before he observed any "weaving" and, even after he stopped the car, he made no investigation of the possibility of intoxication.... Based on this objective evidence, we conclude that a reasonable officer would not have stopped the car absent an additional, invalid purpose. 799 F.2d at 710–11. We think that the investigatory stop at issue in the instant case is disturbingly similar to the stop that was found to be pretextual in *Smith*.

In this case, Officer Writesman began his pursuit of Ferguson and Lester before he noticed that Lester's vehicle had no visible license plate. Writesman became suspicious of the two men when he saw Lester lay down across the front seat of the Ford, shortly after overhearing Ferguson's conversation with the guard. Writesman positioned himself across the street from the motel so that he could observe Ferguson and Lester's activity from a position of concealment. He observed Ferguson get out of his vehicle and then into the vehicle with Lester. He observed them drive to room 410, where Ferguson entered the room and came out a few minutes later. He continued to observe the men drive back to the Lincoln to retrieve a briefcase and then back to room 410, where Ferguson entered the room with the briefcase. When the two men finally left the motel parking lot, heading east on Summer avenue, Writesman followed them. According to Writesman's testimony, he did not notice that Lester's vehicle did not have a visible license plate until he began following the vehicle. Furthermore, Writesman stated that one of the reasons he stopped the vehicle was because of what he observed at the motel. We also think it is significant that Writesman made no inquiry or investigation whatsoever concerning the absence of a visible license plate on the Ford, nor did he give Lester a citation for not having a visible license plate.

Based on our review of the evidence in this case, we do not believe that a "reasonable officer" would have stopped Lester because his vehicle had no visible license plate, absent some additional, invalid purpose. The objective evidence, which includes Writesman's own testimony, shows that Writesman was not interested in giving Lester a warning or a citation for driving a vehicle with no visible license plate. Although Writesman testified that he routinely stops vehicles that do not display a visible license plate, there is overwhelming evidence that Writesman stopped the vehicle because he wanted to conduct an investigatory drug stop, suspicious of the activity he observed at the motel. Accordingly, we find that the district court's denial of Ferguson's motion to suppress the weapon and drugs seized during his arrest is clearly erroneous.

This case is distinguishable from *Pino* and *Crotinger*, where this Court applied the *Smith* analysis and found that the challenged police stops were not illegally pretextual in either case. In *Pino*, an officer observed a vehicle swerving on and off the freeway, nearly hitting the guardrail. The officer pulled the vehicle over, questioned the driver, and decided to give the driver a citation and to arrest the driver for illegal lane changing. *Pino,* 855 F.2d at 358–59. Applying the "reasonable officer" analysis from *Smith*, we held that the stop of the vehicle was not pretextual, noting that the officer's "observation of the swerving vehicle gave him probable cause to believe that Pino had violated one or more … Tennessee motor vehicle statutes." *Id.* at 361.

In *Crotinger*, an officer using a speed radar detector pulled over a vehicle for going 66 mph in a 55 mph zone. Upon approaching the car, the officer observed white pills on the floor and detected the smell of marijuana. The officer obtained written consent from the owner of the vehicle to conduct a search of containers and compartments within the vehicle. A search was conducted and marijuana was found. The defendant, however, challenged the introduction of the marijuana as evidence against him, on the ground that it was illegally obtained as the result of a pretextual traffic stop. We rejected this argument and held that probable cause existed for stopping the vehicle and that "[o]bjectively, it is reasonable for a police officer operating a speed trap to stop and ticket

vehicles going 66 mph in a 55 mph zone." *Crotinger*, 928 F.2d at 206.

Based on clearly established precedent in this Circuit, we think the district court committed reversible error by denying Ferguson's motion to suppress. Therefore, we reverse Ferguson's conviction. Accordingly, we need not address Ferguson's argument that the district court erred by refusing to consider his challenge to the validity of two prior convictions used to categorize him as a career offender.

### III.

For the foregoing reasons, we REVERSE appellant's conviction and VACATE his sentence.

BOGGS, Circuit Judge, dissenting.

There is only one question posed by this case: would "the reasonable police officer," an objective construct, stop a car driving at 1 a.m. with no visible license plate? The district court found as a fact that the reasonable officer *would* have made such a stop. There is no basis in the record, and no basis in common sense, for holding that finding clearly erroneous. Therefore, the district court's ruling and the defendant's conviction must stand, and I respectfully dissent.

Although the court professes allegiance to the objective test, it buttresses its conclusion with subjective evidence and concentrates primarily on Officer Writesman's actions after the stop was made. The court displays its reliance on a subjective test in this summary of its reasoning: "Although Writesman testified that he routinely stops vehicles that do not display a visible license plate, there is overwhelming evidence that Writesman stopped the vehicle because he wanted to conduct an investigatory drug stop, suspicious of the activity he observed at the motel." (Maj. op. at 205) This confuses the analysis. There is no question that Writesman was partially motivated by his suspicion of drug activity. He admitted his suspicion on the stand. However, the existence of an illegitimate motivation does not render a concurrent legitimate motivation pretextual. To the

contrary, it is irrelevant. The proper inquiry is whether a reasonable officer would have stopped Ferguson and Lester "in the *absence* of an illegitimate motivation." *Smith*, 799 F.2d at 708 (emphasis added). By focusing entirely on the illegitimate motivation and whether it was the true or dominant reason for the stop, the court, despite ostensibly adhering to the objective test, has applied a subjective test.

This holding has several undesirable consequences. First, the court appears to be reserving the right to declare any stop unreasonable when it believes that the ostensible reason—no matter how reasonable and justified by the circumstances—is not the true or dominant motivation for the stop. Second, the court's holding apparently presumes a constitutional right to be free from public observation based on suspicious conduct that does not amount to probable cause. No such right exists. *See, e.g., United States v. Knotts*, 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983). The essence of good police work is to notice what appears to be out of the ordinary, the possible precursors or indicia of unlawful conduct, to take appropriate steps to confirm or deny those suspicions, within constitutional limits, and then to take appropriate action when violations are observed or probable cause appears. That is exactly what happened here.

Officer Writesman made no bones about the fact that his observation led him to believe that unlawful conduct might be afoot. In fact, Officer Writesman admitted that he did not notice the missing license until, prompted by the suspicious activity at the motel, he began following the Ford. Therefore, Officer Writesman probably would not have noticed the license violation if he had not followed up on his suspicions. However, these circumstances do not alter our analysis. Conduct arousing suspicion of criminal activity does not immunize a citizen from being stopped for a different, though significant, violation of the law. On the contrary, suspicious conduct is likely to attract police scrutiny and increase the probability of being stopped for traffic violations or other offenses. Increased

scrutiny alone is not a constitutional violation. A citizen's constitutional rights are violated only if the stated motivation for the stop is not objectively reasonable and is thus an *unreasonable* pretext for an illegitimate motivation.

*Smith, Pino,* and *United States v. French,* 974 F.2d 687 (6th Cir.1992), all involve this same situation—an officer observing suspicious conduct, following a vehicle, and making a traffic stop based on alleged violation of traffic regulations. In each of these cases, the traffic violation is, in some sense, a "pretext" to the end of obtaining information about the suspected crime, and the suspicion is a "but-for" cause of the stop, because the officer would not have been in a position to observe the violation had it not been for the suspicion.

Of course, not every minor violation of traffic regulations justifies a stop. As the Eleventh Circuit stressed, the question is not whether a reasonable officer *could* legally have stopped the defendant, but whether a reasonable officer *would* have stopped the defendant. *Smith,* 799 F.2d at 708. The appropriate inquiry under the objective test is whether the traffic violation is one that is so minor (e.g., failing to signal before changing lanes on an open road; going one mile an hour over the speed limit; or failing to come to an absolutely complete stop before turning right at a stop sign) that a reasonable officer would not have stopped an unsuspicious car, or whether the stop was for a reason that would have led a reasonable officer to make the stop under any circumstances.

The cases give us some considerable guidance in assessing where this line should be drawn. *Crotinger* is particularly instructive, as it provides a calibration with which we are all familiar. Crotinger was driving 66 miles an hour in a 55 mile an hour zone. It is quite likely that many readers of this opinion have done so, and quite likely that most would have felt somewhat aggrieved at being stopped, though such a stop would be close to the line. At 20 miles an hour over the limit, most of us, I believe, would feel that the officer was quite justified, and at 3 miles an hour over the limit, virtually everyone would feel that a reasonable officer would not have made the stop. *Crotinger,* 928 F.2d at 206.

The other two Sixth Circuit cases are even more problematic than *Crotinger.* In *Pino,* an officer pulled alongside a rental car that he suspected was driven by a drug courier. When the driver saw the officer passing, he panicked, abruptly braked and swerved onto the shoulder. The officer, now highly suspicious, played a cat-and-mouse game with the defendant. He drove more and more slowly in an attempt to force the defendant to pass him again, but only succeeded when he pulled to a complete stop on the shoulder. A subsequent search confirmed the officer's suspicion of drug activity. Not surprisingly, the officer did not claim that he stopped the defendant because his driving raised suspicion of drug activity. Instead, the officer claimed there was probable cause that the defendant violated several traffic regulations, such as those prohibiting passing a vehicle on the right, weaving, endangering pedestrians, and not using blinkers. We accepted the officer's explanation and upheld the stop. *Pino,* 855 F.2d at 361. Of course, the same activity—erratic driving—heightened the officer's suspicion of the drug activity and provided the grounds for the minor traffic offenses. In essence, the stop was not pretextual because the defendant's panicked response to the sight of a police officer was so pronounced that the officer could classify it as a traffic offense.[1]

---

1. However, the difficulty with *Pino* is not that the officer's dominant motive for the stop was undoubtedly suspicion of drug activity. The problem is that the two motives are inseparable; they are really one motive with two characterizations—one legitimate and one illegitimate. But the legitimate reason for the stop, the traffic offense, would never have materialized had the officer not zealously followed up on the illegitimate motive. The officer's suspicion and investigation, in effect, precipitated the erratic driving. In contrast, Officer Writesman's actions in no way provided the grounds for the stop; he did not cause or contribute to the license violation. His suspicion and subsequent observation only provided the opportunity to notice the lack

In *French*, police officers followed a vehicle for nearly 50 miles before stopping it for speeding. Applying the objectively reasonable analysis, we found that the stop for speeding was valid even though one officer admitted, not surprisingly, that he was partially motivated by the suspicion of drug trafficking. *French*, 974 F.2d at 691–92. We stated that the officers "acted in an objectively reasonable manner because the Mercedes was, in fact, speeding"—even though the car was clocked at only seven miles an hour over the limit. *Id.* at 692.

Finally, in *Smith* itself, the only case in which a stop was ruled invalid, the relevant conduct was "weaving" by 6 inches onto the shoulder and not looking at the nearby patrol car. The *Smith* court properly held that a reasonable officer would not have made the stop.

The conduct here, in my view, was clearly more egregious than that in *Crotinger*, *Pino*, and *French*. Driving with no visible vehicle registration is a violation of Memphis City Ordinance § 21–269. It is a significant offense, certainly comparable to the offenses that justified the stops in *Pino*, *French* and *Crotinger*, and Writesman, a police officer with sixteen years of experience, testified that he routinely stops cars that do not display a license. Ferguson failed to present, and the court does not provide, any evidence or argument that Writesman's conduct is not consistent with that of a reasonable police officer or that Memphis police officers routinely choose not to enforce this ordinance.

If I drove around town for any length of time with no visible license plate, I would not be surprised at all to be stopped as soon as I was observed by an officer going in the same direction who was not otherwise engaged. Having in fact been stopped by a reasonable police officer for the lesser and more difficult-to-detect offense of not displaying an auto inspection decal, it strikes me very forcefully that Officer Writesman's action in stopping a car with no visible license plate does not

of a license. Thus, it is difficult to understand how a judge could uphold *Pino* and yet vote to

clearly brand him as an unreasonable police officer. The court's opinion today is impossible to square with the objective test that is the law in this circuit, and I therefore dissent.