[Cite as *State v. Lenard*, 2012-Ohio-1636.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 96975 and 97570

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RICHARD M. LENARD

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART; REVERSED AND REMANDED IN PART

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533654

**BEFORE:** Jones, J., Sweeney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 12, 2012

**ATTORNEY FOR APPELLANT**

Gayl M. Berger
24100 Chagrin Blvd., #330
Cleveland, Ohio 44122


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Nick Giegerich
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** In these consolidated appeals, defendant-appellant, Richard Lenard, challenges the denial of his (1) motion to suppress, (2) motion to dismiss the indictment, (3) motion to vacate, set aside, or suspend court costs, fines and restitution, and (4) motion for return of property. We affirm in part and reverse and remand in part.

## I. Procedural History and Facts

**{¶2}** In February 2009, Lenard was charged in Case No. CR-520755 with one count each of theft, breaking and entering, and possession of criminal tools. Trial was set to begin on June 15, 2009. The trial did not go forward on June 15; rather, the case was dismissed at the state's request as the "case [was] to be reindicted."

**{¶3}** In February 2010, Lenard was indicted in this case, Case No. CR-533654. The indictment consisted of 18 counts: Counts 1, 5, 9, 13, and 17 charged theft with forfeiture specifications; Counts 2, 7, 11, and 15 charged forgery; Counts 3, 8, 12, and 16 charged tampering with records; Counts 4, 6, 10, and 14 charged breaking and entering; and Count 18 charged possessing criminal tools.

**{¶4}** The original arraignment set for February 23, 2010 was rescheduled and occurred in May 2010 after Lenard was transported from prison to Cuyahoga County. At arraignment, Lenard was declared indigent and assigned counsel. Despite having been assigned counsel, Lenard filed numerous pro se motions throughout the proceedings.[1] Defense counsel also filed numerous motions. One of those motions

---

[1]"A defendant represented by an attorney is not entitled to file pro se motions." *State v. Dudas*, 11th Dist. Nos. 2007-L-140 and 2007-L-141, 2008-Ohio-3262, ¶ 92.

was a motion to suppress. The testimony at the suppression hearing established the following.

{¶5} The Richmond Heights Police Department was contacted by Kalilah Crumpler regarding a house located at 4822 Richmond Bluffs Drive. Crumpler told the police that the house had been for sale, she had entered into a real estate agreement to purchase it, and she was scheduled to close on the agreement in a week. Crumpler informed the police that she drove by the house and saw a "for rent" sign on the garage.

{¶6} Crumpler had called the number on the sign and spoke with a man who identified himself as "Richard." Richard told her that the Richmond Bluffs home had already been rented, but that he had another nearby property on Manchester Court available to be rented. Richard and Crumpler made arrangements for her to see the Manchester Court house on January 5, 2009. Crumpler, a black female, told the police that she believed Richard was a black male. Detective Michael Gerl and Sergeant Richard Olexa agreed to accompany Crumpler to the meeting.

{¶7} The police and Crumpler drove separately; Gerl and Olexa were in an unmarked vehicle. Olexa was dressed in a police uniform; Gerl was dressed in plain clothes.

{¶8} No one was present when the police and Crumpler arrived at the Manchester Court house. The police told Crumpler that they were going to go check on the Richmond Bluffs Drive house, but she should remain at the Manchester Court house in case Richard showed up.

**{¶9}** Upon leaving the Richmond Bluffs Drive house, the police saw a red GMC Yukon parked a short distance away with a black male sitting in the driver's seat. According to the police, the vehicle was positioned so that the driver had a clear view of the Manchester Court house.

**{¶10}** The police turned their vehicle around to drive to the Yukon so that they could investigate. As the police approached the Yukon, its driver sped off at a high rate of speed. The police activated their vehicle's lights and sirens, but the driver of the Yukon continued speeding, including through an intersection with a stop sign without stopping, until the vehicle reached Richmond Road, a main thoroughfare. During the pursuit of the vehicle, the police called in the license plate number to dispatch, who informed them the vehicle was registered to Inner Circle Real Estate.

**{¶11}** The police approached the Yukon and asked the driver, Lenard, for his identification; Lenard complied. They told him that they stopped him for speeding and failing to stop at a stop sign, and that they were investigating a real estate transaction in the neighborhood. The police informed Lenard that he was being detained and advised him of his *Miranda* rights.

**{¶12}** While speaking with Lenard, the police saw three cell phones on the front passenger seat and asked if they could see one of the phones. Gerl and Olexa both testified that Lenard voluntarily gave them one of the phones. Olexa used the phone Lenard gave to call Gerl's cell phone. The number that appeared on Gerl's caller identification was the same number that was on the "for rent" signs at the houses.

{¶13} The officers then learned from dispatch that Lenard was driving under suspension with limited privileges. They asked Lenard for his documentation showing his limited driving privileges, but Lenard did not have it. Gerl and Olexa testified that, under their department's policy, failure to provide documentation of limited privileges when driving under suspension was an arrestable offense. The officers arrested Lenard, and prior to having his vehicle towed, completed an inventory of it.

{¶14} In the days following Lenard's arrest, the police investigated various properties they believed were associated with Lenard. One of the properties was a home in Garfield Heights. On January 8, 2009, Gerl and Olexa went to the house and a female, Kim Yadda, Lenard's wife, was coming out of the house to get a dog. The officers testified that upon speaking with Yadda, she invited them into the house and they accepted. They questioned her about Lenard's business and whether he had a home office. Yadda told him that Lenard did have an office and took them into it. The officers saw some items in "plain view" that they deemed to be "significant evidence." They advised Yadda that they were going to get a search warrant and that she should not disturb anything in the room.

{¶15} Gerl averred to his investigation of the case in an affidavit in support of the search warrant. The warrant was issued and Lenard's office was searched on January 9, 2009.

{¶16} In November 2010, the trial court summarily denied Lenard's motion to suppress.

{¶17} In April 2011, Lenard's attorney requested, and was granted, permission to withdraw from the case. The court assigned a county public defender to represent Lenard. The case was set to proceed to trial on June 7, 2011. The state dismissed the forfeiture specifications attendant to the theft counts, with the exception of Count 1. At the close of the proceedings on June 7, the case was postured to proceed to voir dire.

{¶18} The following day, June 8, 2011, Lenard pled no contest to the charges as indicted and the forfeiture specification attendant to Count 1. The trial court found Lenard guilty based on the state's representation of the facts that would have been established at trial. The trial court sentenced Lenard to two years in prison.

{¶19} Lenard, by and through counsel, raises the following assignments of error:

[I.] Appellant was denied his Fourth Amendment right to be free from unlawful search and seizure.

[II.] Appellant was denied his Sixth and Fourteenth Amendment right to speedy trial.

Pro se, Lenard raises the following assignments of error:

[III.] The trial court erred when it failed to vacate court costs because the court did not follow statutory requirements when imposing the order pursuant to O.R.C. 2947.23, 2329.66 and 2949.14 et seq.

[IV.] The trial court erred when it failed to grant the appellant's motion for return of property when the court did not comply with required law for a forfeiture specification pursuant to R.C. 2981.04 or R.C. 2941.1417.

[V.] The general or exploratory search on January 8, 2009 should be found involuntary under the totality of the circumstances because exploratory searches and seizures are prohibited as an evidence gathering tool and evidence gathered from that search should have been suppressed.

[VI.] The trial court erred to the prejudice of appellant by denying his

motion to suppress evidence because the search warrant affidavit lacked sufficient probable cause to the magistrate to issue a search warrant for January 9, 2009 where the good faith exception doesn't apply.

## II. Law and Analysis

### A. Motion to Suppress

**{¶20}** In his first, fifth, and sixth assignments of error, Lenard challenges the denial of his motion to suppress. Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104, 651 N.E.2d 965; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

**{¶21}** Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at *id.* However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist.1995).

**{¶22}** Initially, we consider Lenard's observation that the trial court did not issue findings of fact under Crim.R. 12(F) in denying his suppression motion. In *State v. Alexander*, 120 Ohio App.3d 164, 697 N.E.2d 255 (8th Dist.1997), this court held that

"'in order to invoke Crim.R. 12(E),[2] the defendant must request that the court state its essential findings of fact in support of its denial of a motion.'" *Id*. at 169, quoting *State v. Loza*, 71 Ohio St.3d 61, 72-73, 641 N.E.2d 1082 (1994), citing *State v. Benner*, 40 Ohio St.3d 301, 317, 533 N.E.2d 701 (1988).

{¶23} Here, Lenard did not request findings of fact from the trial court. Lenard has therefore not preserved this issue for review. *Alexander* at *id.* "Even had the error been preserved, inadequate findings of fact are treated as harmless error where the lack of such findings does not prevent the appellate court from fully reviewing the suppression issues." *Id.*, citing *State v. Brewer*, 48 Ohio St.3d 50, 60, 549 N.E.2d 491 (1990). The record of the suppression hearing and the arguments presented by counsel at the trial court level permit this court to fully review the issues presented relative to the motion to suppress.

{¶24} Lenard contends that: (1) the stop was an unconstitutional pretextual stop; (2) the police engaged in an unlawful search and seizure when they went to his Garfield Heights home and spoke with his wife; and (3) the search warrant failed to establish probable cause. We consider each in turn.

1. The Stop

{¶25} In his first assignment of error, Lenard contends that the police stop was

---

[2]Now re-lettered as (F), Crim.R. 12(E) provided that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

pretextual. Specifically, he contends that the "intent of the officers * * * [was] clear: they wanted to see what the red Yukon was doing in the area, to check it out." Lenard cites the lack of citations for the traffic offenses and the failure of the police to list the traffic offenses in their report as support for his contention.

{¶26} In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that:

> The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective. *Id*. at the syllabus.

{¶27} The Ohio Supreme Court reached a similar conclusion in *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), holding:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. *Id.* at the syllabus.

{¶28} The *Erickson* Court relied on the Sixth Circuit Court of Appeals decision in *United States v. Ferguson*, 8 F.3d 385 (6th Cir.1993). In *Ferguson*, a police officer in a marked cruiser was speaking with a security guard in a motel parking lot when the officer observed Ferguson drive into the parking lot in a Lincoln automobile. Ferguson's car was followed by a Ford automobile driven by Leonard Lester. Ferguson got out of the Lincoln and walked toward the back of the parking lot. When the police officer went to leave the parking lot, he observed Lester, who was still seated in the Ford, lie down

across the front seat of the vehicle in an apparent attempt to hide. Having become suspicious of the situation, the officer parked his cruiser across the street and continued to observe the two men.

{¶29} Eventually, Ferguson got into the Ford with Lester, drove to a different spot in the parking lot, and went into a motel room. Ferguson left the room several minutes later and got back into the Ford with Lester. The two men then drove to Ferguson's Lincoln, removed a briefcase from the Lincoln, and drove the Ford back to the motel room. Ferguson entered the motel room carrying the briefcase and then emerged from the room with the briefcase still in hand. The two men then drove out of the parking lot in the Ford automobile, leaving the Lincoln behind.

{¶30} The police officer followed the Ford and noticed that there was no visible license plate on the vehicle — a violation of a city traffic ordinance. The officer stopped the Ford and, among other things, questioned Lester (the driver) concerning the events at the motel. Lester was never cited for or questioned about the traffic offense. However, Ferguson was arrested when the officer noticed a firearm on the front seat of the vehicle. In searching the vehicle and the briefcase incident to Ferguson's arrest, police found cocaine and other evidence of drug trafficking. Ferguson was indicted for drug trafficking and possession of a firearm during and in relation to a drug trafficking crime.

{¶31} Ferguson moved to suppress the evidence obtained during the traffic stop, claiming that the stop was pretextual and, thus, illegal. At a hearing on the motion, the police officer testified that the primary reason he had stopped the vehicle was because of

Ferguson and Lester's suspicious activity at the motel. However, the officer also testified that he had stopped the vehicle for a license plate violation. Following the hearing, the federal district court denied the motion to suppress.

**{¶32}** On appeal, a panel of the United States Court of Appeals for the Sixth Circuit reversed Ferguson's conviction and vacated his sentence, finding that the traffic stop had been pretextual and, thus, unlawful. *United States v. Ferguson*, 989 F.2d 202 (6th Cir.1993). However, the Sixth Circuit vacated the panel's decision in order to address, en banc, the following question: "Where an officer has probable cause to make a traffic stop, and also has motivations that are unrelated to the traffic stop such as an intent to investigate suspicious activity, may the stop be deemed unconstitutional because it is pretextual?" *Ferguson*, 8 F.3d at 387.

**{¶33}** The en banc Sixth Circuit affirmed the district court's decision denying the motion to suppress, finding the traffic stop was not violative of the Fourth Amendment because the police officer had probable cause to stop Ferguson and Lester based on the minor traffic violation of driving without a visible license plate. *Ferguson*, 8 F.3d at 391-393. In so holding, the Sixth Circuit stated, in part:

> We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. * * * We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is

irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop. *Id.* at 391.

{¶34} Thus, in light of *Whren*, *Erickson*, and *Ferguson*, the stop of Lenard was legal and the first assignment of error is overruled.

2. Encounter with Lenard's Wife

{¶35} In his fifth assignment of error, Lenard contends that the police action in speaking with his wife and entering his home was illegal.

{¶36} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *State v. Tincher*, 47 Ohio App.3d 188, 190, 548 N.E.2d 251 (12th Dist.1988). If evidence is obtained through actions that violate an accused's Fourth Amendment rights, exclusion of the evidence at trial is mandated. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶37} Not every encounter between a citizen and a law enforcement official implicates the state and federal prohibition on unreasonable searches and seizures, however. *California v. Hodari D.*, 499 U.S. 621, 626-628, 111 S.Ct. 1547, 113 L.Ed.2d

690 (1991); *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995). The United States Supreme Court has created three categories of police-citizen contact to identify the separate situations where constitutional guarantees are implicated: (1) consensual encounters, (2) investigative or "*Terry*"[3] stops, and (3) arrests. *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982); *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Lyndhurst v. Sadowski*, 8th Dist. No. 74313, 1999 WL 684570 (Sept. 2, 1999).

{¶38} Police may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity. *Mendenhall* at 556. Encounters between the police and the public are consensual when the police approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk away. *Mendenhall* at 554; *State v. Jones*, 112 Ohio App.3d 206, 211, 678 N.E.2d 285 (2d Dist.1996). A "seizure" giving rise to Fourth Amendment concerns occurs only when, in view of all the circumstances surrounding the incident, the police officer, either by physical force or by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's request and walk away. *State v. Williams*, 51 Ohio St.3d 58, 61, 554 N.E.2d 108 (1990); *Jones* at *id.*

{¶39} Further, an encounter may be consensual even if it occurs on private property. *Williams* at *id*.; *State v. Haberman*, 5th Dist. No. 99CA0068, 2000 WL

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

873521 (June 2, 2000) (no seizure when officer asked person to step out of tent pitched in private yard); *State v. Szewczyk*, 7th Dist. No. 98-CA-20 1999 WL 759990 (Sept. 14, 1999) (no seizure when police encountered driver making purchase at a drive-thru shop); *State v. Wolske*, 6th Dist. No. WD-97-061, 1998 WL 336623 (May 29, 1998) (no seizure when officer approached truck parked in parking lot with private property signs posted).

{¶40} The evidence here established that the police engaged in a consensual encounter with Yadda. As the police were arriving at the house, Yadda was coming outside to retrieve a dog. The police approached her and she invited them into the house. When the police questioned Yadda about whether Lenard had a home office, she took them into the office. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 9 L.Ed.2d 576 (1967).

{¶41} Thus, Yadda's encounter with the police was a consensual one and Fourth Amendment protections were not implicated. The fifth assignment of error is therefore overruled.

3. The Search Warrant

{¶42} In his sixth assignment of error, Lenard contends that the affidavit submitted in support of the search warrant "lacked the necessary information for the magistrate to determine evidence of a crime would be found in the home."

{¶43} In reviewing the sufficiency of probable cause in an affidavit submitted in

support of a search warrant, the duty of the reviewing court is to determine whether the issuing judge or magistrate had a substantial basis to conclude that probable cause existed. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus, following *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Neither a trial court nor an appellate court should substitute its judgment for that of the issuing judge or magistrate by conducting a de novo review. *George* at *id.*

{¶44} In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must make a practical, common-sense decision whether given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at paragraph one of the syllabus. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should afford great deference to the issuing judge or magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Id.*

{¶45} Lenard first contends that the affidavit was lacking because the information contained therein was derived from the improper "search" of his home when his wife was present. For the reasons discussed above, the encounter with Lenard's wife did not constitute a search and seizure. Rather, it was a permissible consensual encounter.

{¶46} Second, Lenard contends that the affidavit was lacking because it did not state how the police discovered the home was Lenard's. In *State v. Sheppard*, 84 Ohio St.3d 230, 1998-Ohio-323, 703 N.E.2d 286, the Ohio Supreme Court upheld a search warrant issued upon an affidavit that stated the police were investigating a crime and their investigation led them to the defendant's home. The Court further held that neither the defendant's name nor the name of the owner of the house needed to be on the warrant, because the warrant described exactly the place to be searched. *Id.*, citing 2 LaFave, *Search & Seizure*, Section 3.1. (3 Ed.1996).

{¶47} Here, the affidavit in support of the warrant stated that the police "[i]nvestigation led affiant and Det. Chuck Duffy to 4622 East 86th St. in Garfield Heights where they met with * * * the wife of Richard Lenard." Under *Sheppard*, this averrment in the affidavit was sufficient.

{¶48} Lenard next contends that the affidavit "does not indicate a fair probability that evidence will be found at the Appellant's address." We disagree. Gerl averred in the affidavit that when Lenard's wife took the police in his office they saw files and computers. He averred that in his "training and experience, he has knowledge that persons who engage in fraudulent real estate schemes will use computers to create fraudulent documents * * * [and] will store documents and data on computer hard drives and storage devices * * *." Gerl further averred that "based upon his training and experience, records and other documents for the aforementioned fraudulent transactions are contained therein."

**{¶49}** On this record, the issuing judge or magistrate had a substantial basis for concluding that probable cause existed. The sixth assignment of error is therefore overruled.

B. Motion to Dismiss: Speedy Trial

**{¶50}** Although his second assignment of error is captioned in terms of his constitutional speedy trial rights having been violated, within the argument section of the assigned error, Lenard also contends that his statutory speedy rights were violated. Thus, we will consider both Lenard's statutory and constitutional rights to a speedy trial.

**{¶51}** An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, of the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32. These speedy trial rights are essentially equivalent. *State v. Butler*, 19 Ohio St.2d 55, 57, 249 N.E.2d 818 (1969). Ohio's speedy trial statutes, found in R.C. 2945.71 et seq., were implemented to enforce those constitutional guarantees. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 1996-Ohio-171, 661 N.E.2d 706; *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10.

**{¶52}** We first address Lenard's statutory claim. R.C. 2945.71(C)(2) requires a criminal defendant against whom a felony charge is pending to be brought to trial within 270 days from his arrest. Lenard was arrested on January 5, 2009, but not for the charges in this case; he was arrested for driving under suspension. His right to a speedy

trial began running on February 7, 2009, the day after he was served with the indictment in the first case. *See State v. Shabazz*, 8th Dist. No. 95021, 2011-Ohio-2260, ¶ 25. Although the first case was dismissed by the state, the charges in this case were based on the same facts from the first case and, thus, the first indictment applies for speedy trial purposes. *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 20.

{¶53} Thus, from February 7, 2009, the day after Lenard was served with the first indictment, until June 15, 2009, when the first case was dismissed, 129 days elapsed. From February 13, 2010, the day after Lenard was served with the indictment in this case, until he was brought to trial on June 7, 2011, 478 days elapsed. Thus, a total of 607 days elapsed.

{¶54} However, under R.C. 2945.72(H), the time within which an accused must be brought to trial is extended by:

> (1) [a]ny period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state * * * provided that the prosecution exercises reasonable diligence to secure his availability (R.C. 2945.72(A));
>
> (2) [a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused (R.C. 2945.72(E)); and
>
> (3) [t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

(R.C. 2945.72(H)).

{¶55} In the motion to dismiss filed in the trial court, the defense contended that

43 days elapsed in the first case from January 5, 2009, until February 17, 2009, when Lenard filed a motion to continue the pretrial hearing. That calculation is not correct. The time in the first case did not start to count until February 7, when Lenard was served with the indictment. He was arrested on January 5 for driving under suspension without proof of allowance for limited privileges; he was not arrested for the charges that give rise to this indictment.

{¶56} Thus, in the first case, time ran from February 7, 2009, through February 17 (10 days), when it was tolled because of Lenard's request that the pretrial hearing for that date be continued. *See* *State v. Dankworth*, 172 Ohio App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 41 (2d Dist.). Time was also tolled because of the defense's demand for discovery on February 18, 2009. *See State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 23.

{¶57} On May 19, 2009, the trial court in the first case set the matter for trial for June 15, 2009. In its motion, the defense contended that 27 days ran during that time period; we agree. In the first case, therefore, 37 days ran (10 + 27).

{¶58} Relative to the second indictment in this case, during its pendency, Lenard was incarcerated other than for this case for, if not all, then most, of the time this case was pending. The state contends that he was incarcerated on a 2005 case, Case No. CR-468589, and Lenard has neither contended nor demonstrated otherwise. Our review of the common pleas docket shows that in March 2006 Lenard was sentenced to 11 months prison for that 2005 case. He was granted judicial release in March 2007,

and placed on community control sanctions, but the sanctions were terminated in May 2009 because he violated them by being charged in this case. It is not clear from the docket what period of time Lenard was sentenced to because of his violation.

{¶59} But further review of the common pleas docket demonstrates that Lenard was also incarcerated on other cases during the pendency of this case. The docket from another 2005 case, Case No. CR-463837, shows that at the time Lenard was indicted in this case in February 2010, he was incarcerated on that case, CR-463837. The docket shows that Lenard was sentenced to a four-year prison term in March 2006. He was granted judicial release and given community control sanctions in March 2007. In May 2009, Lenard's community control sanctions were terminated for a violation and he was sentenced to the remaining time, i.e., three years.

{¶60} Additionally, Lenard was incarcerated on a 2008 case while this case was pending, that being Case No. CR-508101. The docket shows that Lenard was sentenced in June 2008 to a six-month prison sentence and one year of community control sanctions. The prison sentence was suspended while Lenard completed his community control. However, in May 2009, the community control sanctions were terminated and Lenard was sentenced to a two-year prison term.

{¶61} Lenard's incarceration on other cases changes the speedy trial analysis. Specifically, R.C. 2941.401 provides in relevant part that:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial

within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance.

**{¶62}** In applying R.C. 2941.401, this court has stated that:

Pursuant to R.C. 2941.401, incarcerated defendants who are aware of active cases against them prior to their incarceration must file a notice of availability with the court and the prosecuting attorney in order to be accorded speedy trial relief. It is the receipt of the notice that triggers the speedy trial timing process. Unless the notice and request are served on the prosecutor and court, R.C. 2941.401 does not impose a duty on the prosecuting attorney to bring the accused to trial within the time provided. (Citations omitted.) *Cleveland v. Branham*, 8th Dist. No. 84855, 2005-Ohio-1313, ¶ 12.

**{¶63}** In *Branham*, the defendant had two pending cases from 2000; he had failed to appear at hearings and warrants were issued for his arrest on both cases. In 2004, the defendant was arrested for getting into an altercation and his outstanding cases were discovered. According to the defendant, he had been in prison for a probation violation from August 2002 until May 2003, and had requested that he be brought to trial on the two outstanding cases.

**{¶64}** This court found that the record was devoid of evidence that the defendant provided notice of his incarceration to the prosecuting attorney. This court therefore found that if the defendant had provided notice, he did not do so according to the statutory requirements. This court held that "[t]hus, because [the defendant] failed to provide the requisite notice, the speedy trial time for the pending offenses was tolled while he was in prison." *Id.* at ¶ 16, citing *State v. Bauer*, 61 Ohio St.2d 83, 85, 399

N.E.2d 555 (1980); *see also State v. Roulette*, 163 Ohio App.3d 775, 840 N.E.2d 645, 2005-Ohio-5435 (4th Dist.2005) (When a defendant who is imprisoned is aware of pending charges against him and fails to file a written notice requesting final disposition, the statutory speedy trial time period tolls until his release from prison); R.C. 2945.72(A).

**{¶65}** Here, Lenard never made a request while he was incarcerated on other matters to be brought to trial on this case.   Thus, time was tolled from at least May 2009 through the time of Lenard's plea (June 2011).   On this record, there was no statutory speedy trial violation.

**{¶66}** We also find that Lenard's constitutional speedy trial rights were not violated.   In *State v. O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 (1987), the Supreme Court of Ohio stated that statutory and constitutional speedy-trial provisions are co-extensive, but that the constitutional guarantees may be broader than statutory provisions in some circumstances.   Therefore, a defendant's Sixth Amendment rights to a speedy trial can be violated even though the state has complied with the statutory provisions implementing that right.   *Id.* at 9.

**{¶67}** Because we find no statutory speedy-trial violation here, Lenard must demonstrate that the trial court and prosecution violated his constitutional speedy-trial rights.   *State v. Gaines*, 9th Dist. No. 00CA008298, 2004-Ohio-3407, ¶ 16.   In order to determine whether a defendant sustained constitutional speedy-trial violations, we balance four factors:   "'Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *O'Brien* at 10, quoting *Barker v.*

*Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**{¶68}** The United States Supreme Court describes the "length of delay" as a double inquiry. *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). First, the defendant must make a threshold showing of a "presumptively prejudicial" delay to trigger application of the *Barker* analysis. *Doggett* at 650, citing *Barker* at 530-531; *State v. Miller*, 10th Dist. No. 04AP-285, 2005-Ohio-518, ¶ 11. Second, after the initial threshold showing, we again consider the length of delay with the other *Barker* factors. *Doggett* at 652, citing *Barker* at 533-534; *Miller* at *id.*

**{¶69}** Courts have generally found that a delay approaching one year becomes "presumptively prejudicial." *Doggett* at 652, fn. 1. This case was pending for more than a year. But, during that time, Lenard requested and was granted numerous continuances, filed numerous motions, and changed counsel several times.[4] In light of the totality of these circumstances, we are not persuaded that the delay was so presumptively prejudicial as to trigger consideration of the *Barker* factors.

**{¶70}** Even assuming arguendo that we did consider the delay presumptively prejudicial, we would not conclude that the *Barker* factors weigh in Lenard's favor. Primarily, Lenard is unable to establish any prejudice resulting from the delay as the delay

---

[4]For example, in Case No. CR-520755, Lenard was granted four continuances in 2009. He also filed numerous motions and discovery requests, including on February 18, 2009, March 2, 2009, March 10, 2009, March 20, 2009, and April 24, 2009. He also changed counsel, resulting in three different attorneys representing him throughout the pendency of the case.

In Case No. CR-533654, Lenard was also granted ten continuances. Lenard also filed various motions and discovery requests and changed counsel once during the pendency of the case.

was the result, in part, of his own actions, and he was incarcerated for parole violations in other cases.

{¶71} Finding that Lenard was not denied his right to a speedy trial pursuant to the United States and Ohio Constitutions and R.C. 2941.401, we find that the trial court did not err in denying Lenard's motion to dismiss based upon his right to a speedy trial. The second assignment of error is therefore overruled.

C. Motion to Vacate Court Costs

{¶72} For his third assigned error, Lenard contends that the trial court erred by failing to vacate the imposition of court costs against him. Specifically, Lenard contends that (1) costs should not have been assessed against him because he was indigent and (2) the trial court failed to notify him of the consequences of failing to pay the costs.

{¶73} In *State v. Bagwell*, 8th Dist. No. 96419, 2011-Ohio-5841, this court addressed the issue of assessing costs against an indigent defendant as follows:

> The statute under which court costs are imposed is R.C. 2947.23. The Ohio Supreme Court has held that R.C. 2947.23 "does not prohibit a court from assessing costs against an indigent defendant; rather it requires a court to assess costs against all convicted defendants." *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. After the *White* decision was issued, the Ohio Supreme Court further stated that:
>
> Costs must be assessed against all defendants. R.C. 2947.23; *White* at ¶ 8. However, we also held in *White* that a judge has discretion to waive costs assessed against an indigent defendant. *Id.* at ¶ 14. Costs are assessed at sentencing and must be included in the sentencing entry. R.C. 2947.23. Therefore, an indigent defendant must move a trial court to waive payment of costs at the time of sentencing. If the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed

under an abuse-of-discretion standard.   Otherwise, the issue is waived and costs are res judicata.   *Bagwell* at ¶ 35-36, quoting *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23.

**{¶74}** Here, Lenard requested at sentencing that costs be waived.   He, therefore, preserved the issue for our review.   The court did not state at the sentencing hearing that costs would be assessed against Lenard and did not advise him on the consequences of failing to pay them.   But relative to costs, the sentencing entry provides: "The court hereby enters judgment against the defendant in an amount equal to the costs of this prosecution."

**{¶75}** In *State v. Cardamone*, 8th Dist. No. 94405, 2011-Ohio-818, 2011 WL 676080, this court held that

> R.C. 2947.23(A)(1) requires that at the time the trial court imposes sentence, the court "shall" notify the defendant that if he fails to pay, or make timely payments against, the judgment of court costs rendered against him, the court "may order the defendant to perform community service * * * ."

*Id.* at fn. 3.

**{¶76}** Accordingly, we vacate the portion of the trial court's sentencing entry relative to court costs and remand for notification to Lenard as to court costs and the consequences of failing to pay them.   *Id.* at ¶ 14; *see also State v. Moss*, 186 Ohio App.3d 787, 2010-Ohio-1135, 930 N.E.2d 838, ¶ 22 (4th Dist.); *State v. Burns*, 4th Dist. Nos. 08CA1, 08CA2, and 08CA3, 2009-Ohio-878, ¶ 12; and *State v. Dansby*, 5th Dist. No. 08 AP 06 0047, 2009-Ohio-2975, ¶ 21-23.

**{¶77}** The third assignment of error is sustained.

D.   Motion for Return of Property

{¶78} For his fourth assigned error, Lenard contends that the trial court erred in denying his motion for return of property.

{¶79} Lenard pled no contest to the charges as indicted and the forfeiture specification attendant to Count 1; the state dismissed the remaining forfeiture specifications.   Count 1 charged theft, stating that Lenard knowingly obtained or exerted control over the Richmond Bluffs Drive property without the consent of the owner or person authorized to give consent.   The forfeiture specification charged that the property was "derived from or through the commission or facilitation of an offense and/or is an instrumentality the offender used or intended to use in the commission or facilitation of a felony offense."   As part of sentencing, the trial court ordered that the Richmond Bluffs Drive property be forfeited.

{¶80} Lenard does not challenge the forfeiture of the Richmond Bluffs Drive property; rather, he challenges the state's retention of property seized during the inventory search of his vehicle and the search of his Garfield Heights home.

{¶81} R.C. 2981.11 governs the safekeeping of property in custody and provides in relevant part as follows:

> Any property that has been * * * seized pursuant to a search warrant, or otherwise lawfully seized or forfeited and that is in the custody of a law enforcement agency shall be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose, and shall be disposed of pursuant to sections 2981.12 and 2981.13 of the Revised Code.

{¶82} R.C. 2981.12 governs the disposition of unclaimed or forfeited property.

The property at issue here was neither unclaimed nor forfeited. R.C. 2981.13 governs the disposition of "contraband, proceeds, or instrumentalities" of "forfeited property" and provides that it is to be "disposed of, used, or sold." Again, the property Lenard sought to have returned to him was not forfeited. The numerous pieces of property Lenard sought to have returned included the following items from his car: compact discs, headsets, cell phones, a flashlight, a hair brush, and a tape measure. Included in the items from Lenard's house were cell phone chargers, a briefcase, a laptop, and a dry erase board.

{¶83} Because the property was neither unclaimed nor forfeited, it should have been returned to Lenard. The fourth assignment of error is therefore sustained.

### III. Conclusion

{¶84} The trial court's judgments are affirmed in part and reversed in part, and the case is remanded in part. The judgments denying Lenard's motion to suppress and motion to dismiss are affirmed. The judgments denying Lenard's motion to vacate the imposition of court costs against him and denying his motion for return of his property are reversed.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court

for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

JAMES J. SWEENEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR